IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION



| | |
|---|---|
| MelanieRobertson | * |
|     Pro Se | * |
|         Plaintiff, | * |
| | *    Case No. |
| V. | * |
| | * |
| Chandler Residential Dba Colton Creek | *    **1:22-CV-1931** |
| Apartments, Jeanna Young, | * |
| Defendants. | * |
| _____/ | * |
| | * |
| | *    JURY TRIAL DEMANDED |

Come Now plaintiff Melanie Robertson,

COMES NOW Plaintiffs Melanie Robertson, for causes of action against Chandler Residential Dba Colton Creek Apartments registered name **Colton Creek XII LLC**, Jeanna Young, and allege and state as follows:

### PARTIES, JURISDICTION AND VENUE 1.

Plaintiff Melanie Robertson, and during all times herein relevant is a resident of Colton Creek Apartment 2014 Avalon Parkway McDonough Ga. 30253.

1

Colton Creek XII LLC is licensed to do business and doing business in the State of Georgia.

Defendant Colton Creek XII LLC is, and during all times herein relevant was, a Georgia corporation, may be served through its registered agent: Corporation Service Company 2 SUN COURT, SUITE 400, PEACHTREE CORNERS, GA, 30092, USA, and is subject to personal jurisdiction in this Court.

Defendant Jeanna Young. may be served at her workplace Colton Creek Apartment 2014 Avalon Parkway McDonough Ga. 30253.

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendant, and the total amount in controversy exceeds $75,000, exclusive of costs and interest of this action. This Court also has subject matter jurisdiction pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 1331.  Venue is proper in this District pursuant to 28 U.S.C.A. section 1391(b)(1)

## GENERAL ALLEGATIONS

This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e-17. Georgia housing code

2

*OCGA § 44-7-24*. Plaintiff seeks injunctive and declaratory relief, compensatory damages, punitive damages, and penalties, and her reasonable attorneys' fees and litigation expenses If Plaintiff decides to hire an attorney as remedies for Defendants' violations of her Federal Rights, Violation Of Privacy, Georgia housing codes as well as common law rights.

## PARTIES

Plaintiff is a resident at Colton Creek Apartments. Plaintiff have resided here for over 13 months.

Upon information and belief, Defendant Chandler Residential is a corporation with its principal place of business in McDonough Georgia.

Upon information and belief, Defendant Jeanna Young is employed by Chandler Residential is a corporation with its principal place of business in McDonough Georgia.

## STATEMENT OF FACTS

1. Plaintiff have been living on property for 13 months
2. Plaintiff have communicated with the Community Manager numerous times over the past 13 months about complaints on the upkeep of Apartment Complex.

3

3. Plaintiff called leasing office complaining about the ground at the apartment complex has not been kept up since the beginning of fall.

4. Leasing agent Jasmine McGath told the property manager that the gentleman was in the background being very belligerent. However Jasmine McGath never spoke on the phone to any gentleman on Plaintiff behalf..

5. Community manager Jeanna Young stated "If this person lives with you, you would need to get him added to your lease asap, to avoid a lease violation for having an unauthorized occupant

6. Community Manager allows other tenants that she knows that have people living in the complex are not listed on the lease.

7. On 04/30/2022 Plaintiff put in for two paid reserve parking space before my neighbor 907. Community Manager gave apt 907 the space that I requested and did not issue me any request. Plaintiff has an account credit and the funds were there.

8. Plaintiff is planning to marry so Plaintiff's fiancee applied to get on the lease.

9. Plaintiff Fiancee was denied by Community manager

10. Community Manager threatened to file a three day eviction on Plaintiff because she believes that the Plaintiff Fiancee lives in the apartment. However the Community Manager stated that she was not certain.

11. Plaintiff has been retaliated against from Community Manager

4

Community Manager has leasing agent Jasmine McGath who lives in Plaintiff building, watching and recording Plaintiff and Plaintiff's guests.

12. Onsite live-inLeasing agent Jasmine McGath and Community Manager Jeanna Young decide to choose to target Plaintiff while remaining resident in the 900 building continues to violate leasing policy by cigarette smoking, Marijuana use, Drug use and prostitution and accessive amount of people dwelling in individual apartment units.

13. Plaintiff and Plaintiff family fear their life due to Onsite live-inLeasing agent Jasmine McGath and Community Manager Jeanna Young going back exposing complaints there were supposed to be confidential to residents and civilians in the 900 building at the apartment complex.

14. Plaintiff is experiencing emotional distress, feeling unsafe due to the fact of crime and unsanitary living conditions.

15. Leasing agent Angel Thompson is dating resident 907. Gave out private and personal information about Plaintiff Fiancee. She violated Plaintiff and Plaintiff's Fiancee privacy by discussing information with the Resident.

16. On or around 04/30/22, Community Manager gave Resident 907 Plaintiff parking space because he is in a relationship with new leasing agent Angel Thompson.

5

17. On Thursday May 12, 2022, Community manager was served a legal complaint from the City of Mcdonough Magistrate court. On Friday May 13, 2022, Community Manager tried to intimidate Plaintiff by parking in the 900 building after work.

18. On Saturday May 14, 2022 It looked like someone was trying to break into Plaintiff's car.

19. On Sunday May 15, 2022 around 11pm. Plaintiff was in her vehicle waiting to see if the vandals would try to come back to break in her car. At that time Plaintiff witnesses Defendant employee Jasmine and her guest who also live in Plaintiff building trying to set off Plaintiff camera and used a laser or some type of animation shooting a bird to Plaintiff camera. While they were doing this. They did not know Plaintiff was in her SUV.

## FIRST CLAIM FOR RELIEF

**Where there is direct evidence of discriminatory intent in the form of actions or remarks of the employer reflecting a discriminatory attitude, however, plaintiff may establish a *prima facie* case by presenting such direct evidence. Favors v. MAQ Management Corp., 753 F. Supp. 941 (N.D. Ga. 1990). he government has the burden of proof on whether the defendant has participated in a "pattern or practice of discrimination." To establish a "pattern or practice of discrimination, `the government must demonstrate' by a preponderance of the evidence that ... discrimination was the company's standard operating procedure[,] the regular rather than the unusual practice. United States v. Habersham Properties, Inc., 319 F. Supp. 2d 1366 (N.D. Ga. 2003).**

6

Lawsuits between tenants and landlords or community managers are increasingly becoming common due to disconnects between the two parties. Both the tenant and a landlord have specific and well defined rights and responsibilities that are structured to maintain order and fairness.

## SECOND CLAIM FOR RELIEF

**(c) Elements of a prima-facie case under this Code section include that a landlord, within three months after the date that a tenant takes any action described under subsection (b) of this Code section:**

**(1) Filed a dispossessory action, except for the grounds set forth in paragraph (2) of subsection (d) of this**

**Code section;**

**(2) Deprived the tenant of the use of the premises, except for reasons authorized by law;**

**(3) Decreased services to the tenant;**

**(4) Increased the tenant's rent or terminated the tenant's lease or rental agreement; or**

**(5) Materially interfered with the tenant's rights under the tenant's lease or rental agreement.**

**(d) A landlord shall not be liable for retaliation under this Code section:**

**(1) For increasing rent or reducing services:**

**(A) Under an escalation clause in a written lease for utilities, taxes, or insurance;**

(B) As part of a pattern of rent increases or for reducing services as part of a pattern of service reductions, for an entire multi unit residential building or complex; or

(C) As part of a rent increase due to the terms of the tenant's or landlord's participation in a program regulated by this state or the federal government involving the receipt of federal funds, tenant assistance, or tax credits; or

(2) For a dispossessory action or lease or rental agreement termination in accordance with this chapter based upon one or more of the following circumstances:

(A) The tenant is delinquent in rent when the landlord gives notice to vacate or files a dispossessory action;

(B) The tenant, a member of the tenant's family, or a guest or invitee of the tenant intentionally damages property on the premises or by word or conduct threatens the personal safety of the landlord, the landlord's employees, or another tenant;

(C) The tenant has breached the lease, other than by holding over, by an action such as violating written lease provisions prohibiting serious misconduct or criminal acts;

(D) The tenant holds over after the tenant gives notice of termination or intent to vacate; or

(E) The tenant holds over after the landlord gives notice of termination at the end of the rental term as agreed upon in the written lease.

(e) In addition to any other remedies provided for by law, if a landlord retaliates against a tenant pursuant to this Code section, such retaliation shall be a defense to a dispossessory action, and the tenant may recover from the landlord a civil penalty of one month's rent plus $500.00, court costs, reasonable attorney's fees where the conduct is willful, wanton, or malicious, and declaratory relief less any delinquent rents or other sums for which the tenant is liable to the landlord.(f) It shall be a rebuttable defense under this Code section that the property has been inspected within the prior 12 months pursuant to any federal, state, or local program which certifies that the property complies with applicable building and housing codes or that the property has been inspected within the prior 12 months by a code

8

enforcement officer or a licensed building inspector who certifies that the property complies with applicable building and housing codes.

*OCGA § 44-7-24*

For instance, the landlord's or property manager's duty is to offer and maintain a safe and functional environment for tenants. On the other hand, tenants have the right to live in a habitable setting, but are required to pay monthly rent and adhere to leasing agreements. The presented case involves the plaintiff who filed a lawsuit against his property manager and lease agent for violation of tenants rights. Following an in depth analysis of the case, it is apparent that the defendants; Jeanna Young and Jasmine McGath have continuously infringed a number of the plaintiff's rights and freedoms and repeatedly proved to be incompetent.

## THIRD CLAIM FOR RELIEF

**Section 44-7-24 - Establishment of a prima-facie case of retaliation by tenant against landlord; elements; exception; remedies; rebuttable defense**

**(a) A residential tenant establishes a prima-facie case of retaliation by demonstrating that he or she took an action under subsection (b) of this Code section relating to a life, health, safety, or habitability concern and by demonstrating that his or her landlord took an action under subsection (c) of this Code section.(b) Elements of a prima-facie case under this Code section include that a tenant:**

**(1) In good faith exercised or attempted to exercise against a landlord a right or remedy granted to such tenant by contract or law**

**(2) Gave a landlord a notice to repair or exercise a remedy under this chapter;**

**(3) Complained to a governmental entity responsible for enforcing building or housing codes or a public utility, and the tenant:**

**(A) Claims a building or housing code violation or utility problem that is the duty of the landlord to repair; and**

**(B) Acts in good faith in that a reasonable person would believe that the complaint is valid and that the violation or problem occurred; or**

**(4) Established, attempted to establish, or participated in a tenant organization to address problems related to the habitability of the property, such as life, health, or safety concerns.**

To begin, the defendants have infringed the tenant's right to a habitable home. Every tenant is entitled to a space considered habitable and this includes an apartment or house that is free from any unsafe conditions (Backman, 2018). For instance, tenant's homes should be free of substantial infestation of insects and dangerous animals, have running water and a comfortable floor. According to the case, the plaintiff has made complaints to the community manager about an unkempt Apartment Complex. Despite receiving the complaints for over 13 months, the community manager has failed to positively respond by maintaining and caring for the apartment complex. Failing to care and maintain the environment may raise health concerns and generally makes the place

10

uninhabitable. Therefore, the defendants have failed in achieving their

responsibility to provide a habitable home for the plaintiff to live.

### FOURTH CLAIM FOR RELIEF

**In both FHA and § 1981 cases, courts apply the methods of analysis developed for use in cases under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e-17.** *See Patterson v. McLean Credit Union,* 491 U.S. 164, **186, 109 S. Ct. 2363, 2377, 105 L. Ed. 2d 132 (1989) (§ 1981);** *Secretary, United States Dep't of Housing and Urban Development v. Blackwell,* **908 F.2d 864 (11th Cir.1990) (FHA). Under this approach, a plaintiff may present either direct evidence of discriminatory or retaliatory intent, manifested by the actions or remarks of the defendant, or use the factors set forth in burden-shifting analysis developed by the Supreme Court in** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, **93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), to raise, by indirect or circumstantial evidence, an inference of discrimination.** *See Hill v. Metropolitan Atlanta Rapid Transit Authority,* **841 F.2d 1533, 1538 (11th Cir.1988);**

The defendants have failed to effectively handle plaintiff's complaints.

Tenants have the responsibility of reporting various complaints ranging from

repairs to privacy concerns. On the other hand, a property or community manager

has the duty to handle or respond to tenant's complaints (Legal Information

Institute, 2022). According to the case, the plaintiff delivered complaints for more

than 12 months but the leasing agent lied about talking to the property manager to

work on the complaints. Failing to handle the complaints and selling false hope to

11

the plaintiff shows the defendants have failed to perform their duties; which include handling tenants complaints.

The defendants have violated the plaintiff's right to privacy. Every person has the right to privacy, which involves legal traditions that prevent a person, organization or government from having one's personal information disclosed or publicized (Backman, 2018). Tenants are not exempted from the right to privacy, and therefore, they should have the benefit of living in a home without being disturbed. However, the case shows the defendants have repeatedly violated the plaintiff's right to privacy through prying and disclosing his personal information. Precisely, the community manager instructed the leasing agent to watch, and record the plaintiff's guest. Additionally, the leasing agent gave out personal information about the plaintiff's fiancee. Essentially, providing pring on the plaintiff and providing his personal information to the public without his knowledge proves the defendant's inability to protect and respect plaintiff's right to privacy.

A sense of discrimination is evident througout the defendant's and plaintiff's interactions. According to legal conventions relating to discrimination in housing,

12


every landlord/property manager should ensure they are in compliance with the Fair Housing laws and

that every action or policy applies to everyone (Legal Information Institute, 2022). As such, landlords should ensure fairness while screening new tenants, or setting apartment rules. Nonetheless, this is not the case for Plaintiff's situation. According to the filed lawsuit, the leasing agent and community manager focus on solely monitoring the plaintiff while intentionally allowing other residents to violate the leasing policies. For instance, other residents can comfortably smoke, use drugs and allow friends and unregistered families to live in the apartment while the plaintiff is required to fully heed to the apartment rules. Additionally, the community manager allows other tenants she identifies with to live with unlisted individuals. Evident from the examples provided, the defendants have discriminated against the plaintiff.

What's more, the defendant threatened to illegally evict the plaintiff. The typical legal conventions on eviction dictates that a landlord or property manager may bar a tenant from using the property in case the tenants materially violates the

lease or fail to pay the agreed-upon ten (Legal Information Institute, 2022). The law further states that the landlord may not evict a tenant in retaliation for the tenants reporting housing violation or problems with the condition of the property (Legal Information Institute, 2022). According to the case, the community manager threatened to file a three day eviction on Plaintiff because she believes that the Plaintiff Fiancee lives in the apartment. However the manager made it clear that she is not certain and his threats only arise following plaintiff's complaints about the apartment's situation. Therefore, the defendant's eviction threats are baseless and illegal and these questions their innocence in the case.

## FIFTH CLAIM OF RELIEF

**Georgia's right of privacy recognized, the Georgia appellate courts have expounded on the right of privacy, describing it as protection for the individual from unnecessary public scrutiny (Athens Observer v. Anderson, 245 Ga. 63, 263 S.E.2d 128 (1980)); as the right of the individual "to be free from... the publicizing of one's private affairs with which the public has no legitimate concern" (Gouldman-Taber Pontiac v. Zerbst, supra, 213 Ga. at**

683, 100 S.E.2d 881); "the right to define one's circle of intimacy" (Macon-Bibb County &c. Auth. v. Reynolds, 165 Ga.App. 348, 350, 299 S.E.2d 594 (1983)); and the right "to be free of unwarranted interference by the public about matters [with] which the public is not necessarily concerned, or to be protected from any wrongful intrusion into an individual's private life which would outrage ... a person of ordinary sensibilities." Georgia Power Co. v. Busbin, 149 Ga.App. 274(6), 254 S.E.2d 146 (1979). If in the light of extrinsic facts words apparently harmless are such as to convey to the mind of the reader who is acquainted [***66] with the extrinsic facts a meaning which will be calculated to expose the person about whom the words are used to contempt or ridicule, then such harmless words become libelous, and an action is well brought although no special damages may be alleged. Behre v. Cash Register Co., 100 Ga. 213, 27 S.E. 986;

The right of privacy has a long and distinguished history in Georgia. In 1905, this Court expressly recognized that Georgia citizens have a "liberty of privacy" guaranteed by the Georgia constitutional provision which declares that no person shall be deprived of **liberty except by due process of law. Pavesich v. New England Life Ins., 122 Ga. 190, 197, 50 S.E. 68 (1905).**

**the right of privacy which recognizes the right of privacy as a fundamental constitutional right, "having a value so essential to individual liberty in our**

15

society that [its] infringement merits careful scrutiny by the *22 courts." Ambles v. State, 259 Ga. 406(2)(b), 383 S.E.2d 555 (1989).

Defendant gave out Plaintiff Fiancee's Private information to employees working at the leasing office. On Saturday 04/30/22 Plaintiff Fiancee went to the leasing office to submit to be added on the lease. He turned his paperwork to Nahkia Smith leasing manager. The leasing manager and the Community Manager were the only individuals who had access to his private information. Angel Thompson told her boyfriend who is a resident in my building about my Fiancee personal information. Jasmine McGrath told her company about my Fiancee personal information. Jasmine and her company tries to intimidate Plaintiff by filming Plaintiff and her guest. Playing with Plaintiff camera.

## DECLARATORY RELIEF ALLEGATIONS

A present and actual controversy exists between Plaintiff and Defendants concerning their rights and respective duties. Plaintiff contends that Defendants violated her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e-17. Georgia housing code *OCGA § 44-7-24*. Plaintiff is informed and believes and thereon alleges that the Defendants deny these allegations. Declaratory relief is therefore necessary and appropriate. Plaintiff seeks a judicial declaration of the respective rights and duties of the parties.

16

## INJUNCTIVE RELIEF ALLEGATIONS

No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs alleged herein. If this Court does not grant the injunctive relief sought herein, Plaintiff will be irreparably harmed.

## PRAYER FOR RELIEF WHEREFORE

Plaintiff prays for relief as follows:

1. For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful;

2. Penalties and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial;

3. For compensatory damages for Plaintiff emotional pain and suffering, in an amount to be proven at trial;

4. For punitive damages in an amount to be determined at trial;

5. For liquidated damages;

6. For her reasonable attorneys' fees and costs of suit, If Plaintiff decides to hire counsel. For such other and further relief as this Court deems just and proper.

Dated: May 16, 2022

                                      Respectfully submitted,

                                      Melanie Robertson

ProSe

_Melanie D_

pro Se Address
911 Trees of Avalon Pkwy
McDonough Ga. 30253

## JURY DEMAND

Plaintiff hereby demands a jury trial in the within-entitled action.

Dated: May 16, 2022                               Respectfully submitted,

By _____

Melanie Robertson
Plaintiff    Pro Se